# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| BOBBY L. SANFORD, JR., | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 7:11-cv-3544-RDP-JHE |
| TUSCALOOSA COUNTY JAIL, *et al.*, | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Bobby L. Sanford, Jr., has filed a *pro se* complaint pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at the Tuscaloosa County Jail in Tuscaloosa, Alabama.[1]  Plaintiff names as defendant Dr. Phillip Bobo.[2]  Mr. Sanford seeks monetary and injunctive relief.

---

[1] Mr. Sanford's complaint was originally construed as one pursuant to 42 U.S.C. § 1983. A 42 U.S.C. § 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens* suit challenges the constitutionality of the actions of federal officials.

[2] Mr. Sanford named additional defendants in his complaint. (Doc. 1) On June 12, 2012, the magistrate judge recommended Mr. Sanford's claims against the Tuscaloosa County Jail, Sheriff Ted Sexton, Chief Bailey, and Lieutenant Jackson be dismissed for failing to state a claim upon which relief may be granted. (Doc. 12.) The magistrate judge further recommended Mr. Sanford's Eighth Amendment medical care claims against Dr. Phillip Bobo be referred to the magistrate judge for further proceedings. *Id*. By order entered July 5, 2012, the district judge adopted the magistrate judge's report and accepted the recommendation. (Doc. 13.)

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. PROCEDURAL HISTORY

On July 6, 2012, the court entered an Order for Special Report, directing a copy of the complaint forwarded to Dr. Bobo and requesting he file a Special Report addressing the factual allegations of Mr. Sanford's complaint. (Doc. 14) Dr. Bobo was advised the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id*. By the same order, Mr. Sanford was advised that after he received a copy of the Special Report submitted by defendant, he should file counter-affidavits if he wished to rebut the matters presented by Dr. Bobo in his Special Report. *Id*.

On April 5, 2013, Dr. Bobo filed a Special Report accompanied by affidavits and Mr. Sanford's medical records. (Doc. 27) Mr. Sanford was notified Dr. Bobo's Special Report would be construed as a motion for summary judgment and he would have twenty (20) days to respond by filing affidavits and other material if he chose. (Doc. 29) Mr. Sanford was also advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Mr. Sanford failed to file a response after requesting and being granted an extension of time to respond. (Docs. 31 & 33)

## II. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, can show some evidence regarding each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).

As the Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prime facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff

> has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

### III.    SUMMARY JUDGMENT FACTS

Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to plaintiff.

From October 30, 2003, to present, Phillip Bobo, M.D., has been employed by Whatley Health Services, Inc. ("Whatley").  (Doc. 27, Ex. 1, Bobo Decl. ¶ 4)  Dr. Bobo currently serves as the Medical Director for Metro Jail Medical Services.  (*Id.*)  Whatley is an entity at all relevant times deemed by the United States Department of Health and Human Services to be an employee of the Public Health Service, and therefore, an employee of the Federal Government for the purpose of the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233 (g)-(n).  (Doc. 27, Ex. 3 at 1-2)  As an employee of Whatley, Dr. Bobo is also deemed by the United States Department of Health and Human Services to be an employee of the Public Health Service and, therefore, an employee of the Federal Government. (*Id.* at 2)  The United States Attorney for the Northern District of Georgia has certified  Dr. Bobo was acting within the scope of his federal employment with Whatley at all times relevant to the allegations giving rise to Mr. Sanford's complaint.  (*Id.*)

4

Dr. Bobo first provided medical treatment to Mr. Sanford on April 2, 2011, the day after Mr. Sanford was booked into the Tuscaloosa County Jail. (Doc. 27, Ex. 1, Bobo Decl. ¶ 6) Mr. Sanford reported to Dr. Bobo he was addicted to methamphetamine, and had been actively using methamphetamine prior to his arrest. (*Id.*)

During the first week of August 2011, Mr. Sanford began having pain in his left arm and shoulder. (Compl. at 5)  By the second week, the pain worsened and Mr. Sanford completed medical request forms to see a doctor. (*Id.*) On August 17, 2011, Officer Tucker observed Mr. Sanford in pain and asked him what was wrong. (*Id.*) Mr. Sanford informed Tucker his arm and shoulder had been hurting for two weeks and within forty-five minutes, he was taken to the medical facility. (*Id.*) Medical staff ordered an EKG for Mr. Sanford and placed his name on a list to see the doctor. (Compl. at 6)

On August 18, 2011, Dr. Bobo examined Mr. Sanford. (*Id.*) Dr. Bobo asked Mr. Sanford how long he had been experiencing pain and whether he had done anything to injure his shoulder and arm. (*Id.*) Dr. Bobo instructed Mr. Sanford to raise his arm but Mr. Sanford was only able to raise it level with his shoulder due to the pain. (*Id.*) Dr. Bobo prescribed Mr. Sanford 800 mg Ibuprofen twice a day for a week.[3] (*Id.*) Mr. Sanford complains Dr. Bobo did not diagnose his condition. (*Id.*)

---

[3] Dr. Bobo states he treated Mr. Sanford on August 22, 2011, for complaints of shoulder pain that reportedly began three to four months prior to his arrest. (Doc. 27, Ex. 1, Bobo Decl. ¶ 7.) Dr. Bobo further states he performed a physical examination, which was unremarkable, and Mr. Sanford had full range of motion in his left shoulder. (*Id.*) Dr. Bobo contends Mr. Sanford insisted on something for pain so he prescribed Ibuprofen 800 mg, twice a day. (*Id.*) It is unclear whether this examination is the same one Mr. Sanford claims took place on August 18, 2011.

After Mr. Sanford's prescription expired, he continued to experience pain in his shoulder and arm. (Compl. at 6) On September 9, 2011, during afternoon lockdown, Mr. Sanford was in so much pain he asked his roommates to call officers and nurses down. (*Id*.) Officer Martin came to Mr. Sanford's cell and said he would call for a nurse. (*Id*.) However, Officer Martin never called the nurses' station. (*Id*.)

The next day, Officer Colts failed to call a nurse for Mr. Sanford and told him to wait until pill call. (*Id*. 6-7) During pill call, Mr. Sanford received Ibuprofen and informed a nurse about his pain. (*Id*.) The nurse told Mr. Sanford there was nothing she could do. (*Id*.)

Mr. Sanford told Officer Craig about his pain and she stated she would place Mr. Sanford's name on a list to see the doctor. (Compl. at 7) Officer Craig confirmed Mr. Sanford was on the list to see the doctor on September 13, 2011. (*Id*.) On September 13, 2011, Mr. Sanford's name was not called and jail and medical staff informed him his name had been removed from the list. (*Id*.)

Dr. Bobo saw Mr. Sanford on September 14, 2011. (*Id*.) After examining Mr. Sanford, Dr. Bobo determined Mr. Sanford's physical examination was unchanged and continued to prescribe 800 mg of Ibuprofen twice a day. (Doc. 27, Ex. 1, Bobo Decl. ¶ 8) Mr. Sanford requested to be taken to the hospital for an x-ray of his shoulder but Dr. Bobo refused. (Compl. at 7) Mr. Sanford also informed Dr. Bobo Ibuprofen "had not fixed the problem." (*Id*.) Dr. Bobo responded he was not diagnosing medical problems that day and ended the examination. (*Id*.)

On September 23, 2011, Dr. Bobo examined Mr. Sanford for continued left shoulder pain. (Doc. 27, Ex. 1, Bobo Decl. ¶ 9)  Mr. Sanford requested Tylenol in addition to Ibuprofen.  (*Id*.)  Dr. Bobo contends Mr. Sanford had full range of motion in his left shoulder. (*Id*.)  In addition to 800 mg of Ibuprofen twice a day, Dr. Bobo also prescribed Mr. Sanford 1000 mg of Tylenol twice a day.  (*Id*.)

On September 27, 2011, Mr. Sanford sought treatment for left shoulder pain.  (Doc. 27, Ex. 1, Bobo Decl. ¶ 10.)  Dr. Bobo referred Mr. Sanford to Dr. Gary Walton who provides medical care to inmates suffering from chronic illnesses. (*Id*.)  Dr. Bobo also continued to treat Mr. Sanford with Tylenol and Ibuprofen for his pain. (*Id*.)

On October 4, 2011, Dr. Bobo examined Mr. Sanford for complaints of left shoulder pain. (Doc. 27, Ex. 1, Bobo Decl. ¶ 11.)  Dr. Bobo transferred Mr. Sanford to DCH Regional Medical Center to obtain an x-ray of his left shoulder.  (*Id*.)  The x-ray revealed minimal degenerative changes.  (*Id*.)  Dr. Bobo continued to treat Mr. Sanford with Tylenol and Ibuprofen.  (*Id*.)

On October 12, 2011, Dr. Walton treated Mr. Sanford for left shoulder pain.  (Doc. 27, Ex. 1, Bobo Aff. ¶ 12)  Dr. Walton discontinued Ibuprofen for Mr. Sanford and added Naproxen. (Doc. 27, Ex. 1, Bobo Decl. ¶ 12; Ex 2 at 9)

Dr. Bobo provided medical care to Mr. Sanford on several occasions following his October 12, 2011, visit with Dr. Walton, but Mr. Sanford did not complain of shoulder pain or any other shoulder-related problems. (Doc. 27,. Ex. 1, Bobo Decl. ¶ 13; Ex. 2 at 1-8)

The United States Department of Health and Human Services has a Claims Office that maintains in a computerized database a record of administrative tort claims filed with the Department, including those filed with respect to federally supported health centers deemed to be eligible for Federal Tort Claims Act malpractice coverage. (Doc. 27, Ex. 4, Torres Decl. ¶ 2) If a tort claim had been filed with the Department against Whatley Health Services, Inc., its approved delivery sites, or its employees and/or qualified contractors, a record of that filing would be maintained in the Claims Branch's database. (*Id*. ¶ 3) There is no record of an administrative tort claim filed by Mr. Sanford, or an authorized representative, concerning his medical care claims against Dr. Bobo. (*Id*. ¶ 4)

### III. DISCUSSION

Mr. Sanford alleges Dr. Bobo denied him adequate medical treatment for pain in his shoulder and arm while Mr. Sanford was incarcerated in the Tuscaloosa County Jail. To the extent Mr. Sanford alleges constitutional claims against Dr. Bobo pursuant to *Bivens* concerning the medical care he received while incarcerated, such claims are due to be dismissed. Section 233(a) of the Public Health Services Act ("PHSA") "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). More specifically, the PHSA provides in pertinent part:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the

8

> United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceedings by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a). Therefore, a United States Public Health Service employee acting within the scope of employment is immune from *Bivens* claims and a tort claim against the United States under the Federal Tort Claims Act ("FTCA") is the exclusive remedy for persons claiming injury due to the actions of a Public Health Service employee. *Hui v. Castaneda*, 559 U.S. 799, 807 (2010).

Mr. Sanford does not dispute the United States Department of Health and Human Services has deemed Whatley Health Services, Inc. to be a Public Health Service employee. Neither does Mr. Sanford dispute that in rendering medical care to inmates at Tuscaloosa County Jail, Dr. Bobo was acting within the scope of his employment with Whatley during the relevant time period and also deemed to be a Public Health Service employee. As such, Dr. Bobo is absolutely immune from suit and Mr. Sanford's medical care claims against Dr. Bobo under *Bivens* are due to be dismissed. Instead, a suit against the United States pursuant to the FTCA concerning Dr. Bobo's alleged negligence is Mr. Sanford's exclusive remedy.

Before an individual may bring a claim in federal court under the FTCA, he or she must exhaust available administrative remedies by presenting his or her claim to the

appropriate federal agency. *See* 28 U.S.C. § 2675; *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008). In addition to alleging the submission of an administrative claim to the appropriate agency, the individual must also show the agency denied the claim or at least six months have passed since the claim was filed. *Id*. Exhaustion is a jurisdictional prerequisite to a plaintiff's suit. *See Burchfield v. United States*, 168 F.3d 1252, 1254-55 (11th Cir. 1999).

Mr. Sanford does not dispute he has not filed an administrative tort claim concerning his allegations against Dr. Bobo. Therefore, this court lacks subject matter jurisdiction over this action because it was prematurely filed.

## RECOMMENDATION

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS plaintiff's complaint be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies. The magistrate judge further RECOMMENDS defendant's motion for summary judgment be DENIED as MOOT.

## NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.** Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge. *See* 28 U.S.C.

§ 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DONE this 13th day of January, 2014.

_____
JOHN H. ENGLAND, III
UNITED STATES MAGISTRATE JUDGE